PAMELA CAMPBELL, CRAIG CAMPBELL, TAMRA CAMPBELL, and KELLY CAMPBELL, minors, by and through their Guardian Ad Litem, REX CAMPBELL, REX CAMPBELL, individually, and FAYE CAMPBELL, Plaintiffs-Appellees, v. ANIMAL QUARANTINE STATION, DIVISION OF ANIMAL INDUSTRY, DEPARTMENT OF AGRICULTURE, STATE OF HAWAII, BOARD OF AGRICULTURE, Defendants-Appellants, and JOHN DOES 1 through 25, Defendants

NO. 6630

CIVIL NO. 45699

AUGUST 26, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

This is an appeal by defendant-appellant Animal Quarantine Station of the State of Hawaii from a circuit court order awarding a total of $1,000.00 to plaintiffs-appellees Mr. and Mrs. Rex Campbell and three of their four children for emotional distress suffered when the plaintiffs' dog (Princess) died in the Animal Quarantine Station. The trial court found the State liable because of its negligence in transporting Princess to a private veterinarian hospital. Although it awarded damages to plaintiffs for the loss of the dog, only the award of damages for emotional distress is at issue in this appeal. We affirm.

I.

Princess, a nine-year-old female boxer, arrived in Hawaii by air on June 6, 1975 and was transported to the Animal Quarantine Station. Princess had been owned by the plaintiffs since she was a few weeks old and had lived with the family continuously before they came to Hawaii.

Princess was given a medical examination the following day and was found to be in good health with the exception of a growth on her gums, which did not require emergency treatment. After the Animal Quarantine Station notified Mr. Campbell of the growth, he arranged to have Dr. Choy of the nearby Kapalama Pet Hospital remove it.

Two days later, Princess was one of seven animals loaded by quarantine station personnel into a van for transportation to the Kapalama Pet Hospital. It was a hot afternoon, and the van was exposed directly to the sun. There were no ventilation devices in the section of the van where the animals waited. Princess was in the hot van for at least an hour. She died of heat prostration 15 to 20 minutes after arrival at the Kapalama Pet Hospital.

None of the plaintiffs saw the dog die, nor did any of them see the deceased body of Princess. Plaintiffs heard the news of Princess' death by phone on the morning of June 10, 1975 from Dr. Choy. Upon hearing the news, all cried except the father. The trial court found that the entire family was preoccupied with Princess' death for two to three weeks after hearing the news, suffering serious

emotional distress. None of the plaintiffs sought psychiatric or medical assistance as a result of the emotional distress which they suffered.

The award, totalling $1,000.00, was in varying amounts to five of the six plaintiffs for their serious emotional distress.[1]

## II.

The State appeals three issues to this court:

(1) Whether plaintiffs must witness the tortious event in order to recover damages for serious mental distress;

(2) Whether medical proof or expert testimony is required to substantiate plaintiffs' claim of serious mental distress; and

(3) Whether the case at bar is controlled by the holding in *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970), allowing recovery for serious mental distress resulting from the negligent destruction of plaintiffs' property.

Our holdings in *Rodrigues v. State, supra, Leong v. Takasaki,* 55 Haw. 398, 520 P.2d 758 (1974), and *Kelley v. Kokua Sales and Supply, Inc.,* 56 Haw. 204, 532 P.2d 673 (1975), established the law of this State in the area of recovery for mental distress. We find that these cases, in particular *Rodrigues and Leong,* are dispositive as to the facts in the case at bar. However, before applying this law to the facts, we find it useful to review the development of Hawaii's approach to the law in this area.[2]

## III.

In *Rodrigues v. State, supra,* we permitted recovery in tort for mental distress due to the State's negligence in causing damages to plaintiffs' house. We recognized that an individual's interest in freedom from negligent infliction of serious mental distress is entitled to

---

[1] The trial court found that all of the plaintiffs, with the exception of Kelly Campbell, sustained serious emotional distress.

[2] The history and development of the law of recovery for mental distress throughout the country is discussed in Leong v. Takasaki, *supra.*

independent legal protection. *Id.* at 174, 472 P.2d at 520. In making such recognition, we did not distinguish between mental distress suffered as a consequence of witnessing injury to another and that resulting from the destruction of one's own property. *Rodrigues* departed from the traditional standard and held that serious mental harm can be inflicted when a person endures negligently inflicted property damage.

We circumscribed such liability to serious mental distress and held that serious mental distress may be found where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case. We held that the question of whether defendant is liable in any particular case will be solved by the application of general tort principles, but we also held that defendant's obligation to refrain from particular conduct is only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. *Id.* at 174, 472 P.2d at 521.

Significantly, *Rodrigues* did not require any threshold showing of physical effects resulting from the distress. Thus, we became the first jurisdiction to allow recovery without a showing of physically manifested harm.[3]

In *Leong v. Takasaki, supra,* this court further refined this new cause of action. In *Leong* the minor plaintiff was crossing the highway with his hanai-grandmother. He noticed an approaching car and stopped, but the grandmother did not. The car struck and killed her. The plaintiff suffered psychic injuries, including shock, but no physical harm.

The trial court dismissed the action on the ground that there could be no recovery for mental distress without resulting physical injury. We reversed the trial court and affirmed our previous holding in *Rodrigues* that mental distress did not have to manifest itself physically. We employed *Rodrigues'* "reasonable man" standard for

---

[3] The physical injury requirement has lately been eliminated in other jurisdictions. The California Supreme Court recently joined this trend and dispensed with the physical injury requirement for claims founded on mental distress. Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 616 P.2d 813, 167 Cal.Rptr. 831 (1980).

determining the extent of the duty owed to the plaintiff and the issue of proximate causation. We explained that:

> [W]hen it is reasonably foreseeable that a reasonable plaintiff-witness to an accident would not be able to cope with the mental stress engendered by such circumstances, the trial court should conclude that defendant's conduct is the proximate cause of plaintiff's injury and impose liability on the defendant for any damages arising from the consequences of his negligent act.

*Id.* at 410, 520 P.2d at 765.

In *Kelley v. Kokua Sales and Supply, Inc., supra,* a father in California died as a result of receiving news by phone of the dea th of his daughter and grandchild in a highway accident which occurred in Hawaii. The crucial question in that case was whether a duty was owed to the father. We held that there was no duty owed to the father as the consequences could not be reasonably foreseen, and clearly, the father's location was too remote from the scene of the accident.

We turn now to the issues presented by the case at bar.

### IV.

Defendant argues that it did not owe a duty of care to plaintiffs because the plaintiffs were neither eyewitnesses to their dog's death nor located within a reasonable distance of the accident; that it was therefore not foreseeable that severe emotional distress would be incurred by plaintiffs.

Defendant attempts to distinguish this case from *Rodrigues* and *Leong* because the plaintiffs did not witness this tortious event, arguing that this case is instead similar to *Kelley*. Defendant reads *Rodrigues* and *Leong* to require that the plaintiffs must actually witness the accident in order to recover.

In *Kelley* we were concerned with formulating a reasonable and proper limitation of the scope of the duty of care because of the potential for unmanageable and unpredictable liability. We therefore imposed a geographical limitation restricting recovery to those located within a reasonable distance from the scene of the tortious event. Our holding in that case was based upon policy considerations. *Kelley's* geographical consideration is not present within the

facts of this case since plaintiffs and their dog were located within Honolulu.

Rather, we find that the facts of this case are similar to those in *Rodrigues,* a case where the plaintiffs witnessed the consequences but not the accident and were not located any further from the scene of the accident than were the plaintiffs in the current case.

Defendant also urges this court to apply the factors enunciated in *Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968), and *D'Ambra v. United States,* 354 F.Supp. 810 (D.R.I. 1973), modified on other grounds, 481 F.2d 14 (1st Cir. 1973).[4] However, in both *Rodrigues* and *Leong,* we held that the factors formulated in *Dillon* and *D'Ambra* should be utilized to determine the genuineness and degree of mental distress, rather than to bar recovery. *Rodrigues* set out the two considerations for recovery: one's interest in freedom from negligent infliction of foreseeable serious mental distress, and the standard of proof to be used by the trier of fact in ascertaining whether the emotional distress was genuine and serious. Thus, we did not indicate in *Rodrigues,* the only case dealing specifically with damage to property, a requirement that the tortious event be witnessed by the plaintiffs.

V.

Defendant's next major contention is that the trial court erred in ruling that medical testimony was not necessary to substantiate plaintiffs' claims of serious emotional distress. No medical testimony was presented in the lower court. The testimony consisted of testimony by the plaintiffs relating to the background of their relationship with Princess, the role Princess played in their daily routine, and their respective feelings and the type of loss which each felt upon hearing the news of the dog's sudden death.

In *Rodrigues v. State, supra,* plaintiffs were awarded damages for mental anguish they suffered due to the flooding of their newly built home. No medical testimony was presented and the proof of their

---

[4] The guidelines for determining liability developed in Dillon and D'Ambra, *supra,* are discussed in detail in Leong v. Takasaki, *supra,* at 408-9, 520 P.2d at 765. These criteria have been used in California and Rhode Island as determinants of liability when applied to the particular factual situations presented to the courts.

distress was limited to testimony by the plaintiffs regarding the effect which the sight of their devasted home had on them. In *Rodrigues,* as in the instant case, the proof of the mental distress was not of a medically significant nature. This court vested the trial court with the discretionary power to judge the genuineness of a claim:

> We believe these reasons [to limit recovery to claims involving serious emotional distress and not to include distress of a trivial nature] are to be considered by the jury and the court with the particular facts of each case in applying the "reasonable man" standard . . . and are not legal limitations on the right to recover.

*Id.* at 173, 472 P.2d at 520.

In *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972), we affirmed our holding that judgment of the genuineness and seriousness of a claim of mental distress resides with the trier of fact. *Dold* involved a lawsuit for breach of contract where the defendant had engaged in intentional overbooking and had thereby forced the plaintiffs to move to another hotel despite their having made advance reservations. In *Dold,* as in *Rodrigues,* this court was faced with a situation where the proof of mental distress was not of a medically significant nature. The trial court in *Dold* gave the following jury instruction:

> Plaintiffs have a right to recover all damages which they have suffered and which the defendants or a reasonable person in the defendants' position should have foreseen would result from their acts or omissions. Such damages may include reasonable compensation for emotional distress and disappointment, if any . . . . There is no precise standard by which to place a monetary value on emotional distress and disappointment, *nor is the opinion of any witness required to fix a reasonable amount. In making an award of damages for emotional distress and disappointment, you should determine an amount which your own experience and reason indicates would be sufficient in light of all of the evidence.*

*Id.* at 21, 501 P.2d at 371 (emphasis added).

This court affirmed the trial court's decision to give this instruction, stating that "the jury was properly instructed on the issue of damages for emotional distress and disappointment." *Id.* at 22-23, 501 P.2d at 372.

In *Leong v. Takasaki, supra,* we differentiated between primary and secondary responses to a traumatic event. Primary responses were defined as the immediate, automatic and instinctive responses to such an event; secondary responses were those resulting in actual physical injury to the body in the absence of physical impact. Clearly, no secondary responses were present in the instant case.

In discussing primary responses, we acknowledged that they are short in duration and transient in nature, although they may result in painful and serious mental suffering. We stated that the precise level of mental suffering resulting from primary responses is difficult to measure with accuracy because the medical expert must rely exclusively on the statements made by the victim. This discussion of primary and secondary responses was not directly related to the issues in *Leong* (there was no indication that the plaintiff had ever consulted a doctor or psychiatrist for treatment of his alleged emotional distress), yet we concluded that the final decision must rest with the trial court:

> Whether the degree of stress engendered by the circumstances of this case is beyond the amount of stress with which a reasonable man can be expected to cope is a question for trial court.

*Id.* at 410, 520 P.2d at 766.

Rather than making medical testimony a prerequisite for recovery for emotional distress, it, like the factors enunciated in *Dillon* and *D'Ambra,* should be used as indicators of the *degree* of the mental distress, not as a bar to recovery. The precautionary requirement imposed by *Rodrigues* to ensure the genuineness of emotional distress claims is that some showing be made that the distress suffered is "serious." Medical proof can be offered to assist in proving the "seriousness" of the claim and the extent of recovery, but should not be a requirement allowing or barring the cause of action. Once the trial court or the jury is satisfied that the distress is "serious," the duration and symptoms of the distress affect the amount of recovery.

In the instant case the trial court correctly ruled that medical testimony was not necessary to substantiate plaintiffs' claims of serious emotional distress. By limiting the total award among five people to $1,000.00, the trial court indicated its awareness of the limited duration and severity of the distress suffered by the plaintiffs.

## VI.

Defendant's third contention is that damages for injured feelings and mental distress suffered by loss of personal property[5] are not proper items of recovery. Defendant relies on case law throughout the United States to support its argument, stating that to allow this kind of recovery "would lead to a plethora of similar cases, many which would stretch the imagination and strain all bounds of credibility."

Hawaii has devised a unique approach to the area of recovery for mental distress. *Rodrigues v. State, supra,* decided by this court more than ten years ago, allowed recovery for mental distress suffered as the result of the negligent destruction of property. Since our holding in *Rodrigues,* there has been no "plethora of similar cases"; the fears of unlimited liability have not proved true. Rather, other states have begun to allow damages for mental distress suffered under similar circumstances.[6]

Accordingly, we affirm the decision of the circuit court. We find that the court correctly applied the standards of law enunciated in our previous holdings in this area, and the issues of whether the damages were proximately caused by the defendant and have resulted in serious emotional distress to the plaintiffs are therefore within the discretion of the trier of fact.

*Dudley Akama, (Everett Cuskaden* on the briefs), Deputy Attorneys General, for defendants-appellants. •

*Dennis W. Potts* for plaintiffs-appellees.

---

[5] The law clearly views a dog as personal property. Thiele v. City and County of Denver, 135 Colo. 442, 312 P.2d 786 (1957); Smith v. Costello, 77 Idaho 205, 290 P.2d 742 (1955).

[6] *See* Knowles Animal Hospital, Inc. v. Wills, 360 So.2d 37 (Dist. Ct. App. 1978). Knowles concerned an action by the owners of a dog against a veterinarian and animal hospital for the negligent burning of the dog with a heating pad following an operation. The District Court of Appeal of Florida held that the jury properly considered the plaintiffs' mental suffering in determining the award. The court ruled that the jury viewed the "neglectful conduct which resulted in the burn injury suffered by the dog to have been of a character amounting to great indifference to the property of the plaintiffs, such as to justify the jury award." *Id.* at 38-39.