**In re HAWAII FEDERAL ASBESTOS CASES**

**This Document Applies To: Trial Groups II and IV.**

**Civ. No. 85–0566.**

United States District Court, D. Hawaii.

Jan. 31, 1990.

As Amended April 3, 1990.

Timothy J. Holzer, Sterns & Ingram, Honolulu, Hawaii, for plaintiffs.

Roy F. Hughes, Honolulu, Hawaii, for Owens–Corning Fiberglas Corp.

George W. Playdon, Reinwald, O'Connor, Marrack, Hoskins & Playdon, Honolulu, Hawaii, for The Celotex Corp. and Raymark Industries, Inc., Successor to RAybestos–Manhattan, Inc.

William S. Hunt, Paul, Johnston, Alston & Hunt, Honolulu, Hawaii, for Pittsburgh Corning Corp.

John S. Nishimoto, Patricia T. Fujii, Libkuman, Ventura, Ayabe, Chong & Nishimoto, Honolulu, Hawaii, for Fibreboard Corp., Owens–Illinois, Inc., Owens–Corning Fiberglas Corp., and Pittsburgh Corning Corp.

Jerold T. Matayoshi, Greeley, Walker & Kowen, Honolulu, Hawaii, for Owens–Illinois, Inc.

Robert G. Frame, Alcantara & Frame, Honolulu, Hawaii, James L. Miller, Brobeck, Phleger & Harrison, San Francisco, Cal., for Fibreboard Corp.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE FOR NEW TRIAL OR FOR REMITTITUR**

SPENCER WILLIAMS, District Judge.

These cases were consolidated for trial from Trial Groups II and IV. Plaintiffs

claim damages for bodily harm and emotional distress as a result of alleged exposure to defendants' asbestos products. With respect to certain plaintiffs in Trial Group II, defendants move for judgment notwithstanding the verdict, or in the alternative, for new trial or for remittitur.

Pursuant to the request of this court, the parties to this litigation have also filed briefs on the issue of emotional damages for fear of cancer due to asbestos exposure. Specifically, the issues presented concern the time when a cause of action accrues and what constitutes a prima facie case under Hawaii law for fear of cancer. The following comprises this court's ruling on these questions and other related issues.

## BACKGROUND

### I. ASBESTOS EXPOSURE

Diseases caused by inhalation of asbestos fibers are unique. In the case of pleural plaques, for example, the mean latency period between the exposure and plaque development is twenty years.[1] There are several types of asbestos-related diseases which for the most part are diseases of the lung.[2] Often the development of these diseases bears little or no relationship to the degree of exposure.[3] In many cases, the symptoms of asbestos-related lung diseases parallel the symptoms of other lung diseases as well as the normal consequences of advancing age.[4]

Frequently, persons claiming damages from exposure to asbestos reflect no objectively observable disablement which is traditionally the basis of tort litigation. For example, significant external damage to skin and other tissue can result in blood loss, pain, observable physical impairment, and anguish due to disfigurement, followed by loss of wages and dramatic changes in lifestyle. While some of the lung diseases caused by asbestos, such as mesothelioma and asbestosis, typically involve some of these indicia of injury, mere lung scarring or pleural plaques or pleural thickening frequently do not involve these indicia.

Many, although by no means all, claims of injury are based on subjective declarations of shortness of breath, tiredness and general lassitude. X-rays may or may not show the presence of asbestos-induced changes in the lung.[5] Even many forms of pulmonary analysis are not definitive in measuring impairment.[6] It is not surprising that extremely well-qualified experts have widely differing opinions as to the significance of these tests.

All of the above indicates a need for some form of easily verifiable standard for determining whether an "injury" exists and when such injury warrants an award of compensation.

### II. ASBESTOS LITIGATION IN GENERAL

It has been estimated that over twenty million Americans have suffered significant exposure to asbestos fibers. *Jackson v. Johns–Manville Sales Corp.*, 750 F.2d 1314, 1316 (5th Cir.1985). Most of these cases with which this court is familiar arise from various levels of exposure of shipyard workers from the late 1930's to and including current workers. No known estimate

---

1. Rosenstock and Hudson, "The Pleural Manifestations of Asbestos Exposure," *Occupational Medicine: State of the Art Reviews*, Vol. 2, No. 2 at 387 (April—June 1987).

2. Such diseases range from a rare type of cancer, mesothelioma, to asbestosis. Asbestosis is marked by the overgrowth of connective tissue in the lung, which may or may not lead to cancer. *See Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517, 528 (Fla.App. 3d Dist.1985).

3. Some studies indicate that mesothelioma can develop from very low levels of asbestos exposure. *See* Selikoff, "Asbestos–Associated Disease" in *Asbestos Litigation*, 21, 48 (W. Alcorn ed. 1982).

4. Examples of such lung diseases would be asthma, chronic bronchitis and emphysema. *See* American Medical Association, *Guides to the Evaluation of Permanent Impairment* (3d ed. 1988) at 108–11 for a discussion of possible parallel symptoms.

5. For example, the correlation between physiological and radiographic abnormalities in asbestosis is poor. *Guides to the Evaluation of Permanent Impairment* at 110.

6. In benign pleural disease, one difficulty lies in establishing pulmonary function parameters. Rosenstock and Hudson at 395.

has been made of the number of other possible types of exposure cases.

The long term impact of asbestos litigation on the judicial system will remain foreboding unless and until the law determines when asbestos injuries are ripe for litigation. For example, does the mere presence of asbestos fibers constitute injury? Would physiological reactions to asbestos exposure, such as pleural thickening or pleural plaques, without disabling consequences, be sufficient to support a claim for damages absent disabling consequences? Should there be objective guidelines for fear of cancer claims?

## DAMAGES

### I. PHYSICAL INJURIES

■■■■ In addition to their emotional distress claims, plaintiffs seek damages for physical injuries due to asbestos exposure. As in all other jurisdictions, damages for bodily harm in Hawaii must be reasonable. *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 563, 632 P.2d 1066, 1070 (1981). Traditionally, damages fall into two categories: special and general damages. Special damages compensate claimants for specific out-of-pocket financial expenses and losses. General damages provide compensation for pain, suffering and emotional distress. While the assessment of general damages is generally left to the judgment of the trier of fact, there is nevertheless some assurance of reasonableness which is a question of law for the court.

An award for physiological reactions to asbestos exposure without more is unreasonable. It is sheer speculation to measure the loss a plaintiff may have suffered for

pleural plaques alone since sub-clinical conditions such as pleural plaques or pleural thickening are not normally associated with physical impairment.[7] As the Hawaii Supreme Court has stated, "[w]here substantial (as distinguished from nominal) damages are claimed ... there should be evidence from which there can be made a reasonable ascertainment of the damage." *City and County of Honolulu v. Plews,* 55 Haw. 199, 211, 516 P.2d 1259, 1267 (1973). In virtually all pleural plaque and pleural thickening cases, plaintiffs continue to lead active, normal lives, with no pain or suffering, no loss of the use of an organ or disfigurement due to scarring. Other courts have expressed doubts that physiological reactions to harmful substances introduced into the body constitute physical injury without a showing of chronic pain or impairment. *See e.g. Ayers v. Jackson Township,* 189 N.J.Super. 561, 461 A.2d 184 (N.J.Super.L.1983), *aff'd in part and rev'd in part on other grounds,* 106 N.J. 557, 525 A.2d 287 (1987).

■■■■ Plaintiffs must show a compensable harm by adducing objective testimony of a *functional impairment* due to asbestos exposure. A claimant's subjective testimony as to shortness of breath and fatigue without more is not sufficient. In other words, the mere presence of asbestos fibers, pleural thickening or pleural plaques in the lung unaccompanied by an objectively verifiable functional impairment is not enough.[8]

However, should plaintiffs later develop asbestos-caused cancer or other injuries that are accompanied by indications of physical impairment, they may later bring suit for those injuries within the time pre-

---

7. Pleural plaques, pleural thickening and the ingestion of asbestos fibers alone may constitute a "technical invasion of the integrity of the plaintiff's person by ... harmless, but offensive, contact ..." thereby entitling plaintiffs to nominal damages. Keeton, *Prosser and Keeton on the Law of Torts* § 9 at 40 (5th ed. 1985), *cited with approval in Kalilikane v. McCravey,* 69 Haw. 145, 737 P.2d 862, 866 (1987). However, such technical, yet harmless invasions would not give rise to compensatory general damages.

8. Generally, speculative harm or threat of future harm is not compensable. *See e.g. Alhino*

v. Starr, 112 Cal.App.3d 158, 177, 169 Cal.Rptr. 136 (1980). One court which specifically addressed the issue of whether subclinical injuries, such as pleural plaques and pleural thickening, were compensable, ruled that they were not compensable. *Burns v. Jaquays Min. Corp.,* 156 Ariz. 375, 752 P.2d 28, 30 (App.1987), *citing Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936, 942 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). The *Burns* court made this ruling even though it assumed that many of the plaintiffs before it likely would develop asbestosis at some future date. *Id.*

scribed by the applicable statute of limitations. As this court has previously found, for example, the development of an asbestos-related cancer in a plaintiff at some later date would give rise to a cause of action separate and distinct from any injuries plaintiffs currently may be suffering.[9]

## II. EMOTIONAL DISTRESS

### A. *The Development of Emotional Damages in Hawaii*

■ In *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), the Hawaii Supreme Court recognized negligent infliction of emotional distress as an independent cause of action. The *Rodrigues* court limited claims to *serious* emotional distress by permitting recovery only where "a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues*, 52 Haw. at 173, 472 P.2d at 520. In addition to confining recovery only to serious claims, *Rodrigues* further limited recovery on general tort principles to those who were foreseeably endangered by the particular conduct involved. 52 Haw. at 174, 472 P.2d at 521.

Claimants in *Rodrigues* sought damages for mental anguish arising from the negligent flooding of their home with its consequential adverse financial loss to plaintiffs. In allowing recovery, the *Rodrigues* court found that the likelihood of opening the floodgates to fraudulent claims and potentially unlimited liability was of little import in fashioning the new standard. 52 Haw. at 173, 472 P.2d at 520.

A review of the situations in which the *Rodrigues* standard has been applied reveals significant distinctions between the interests protected in those factual settings and the type of harm allegedly sustained by the plaintiffs in asbestos cases. In *Rodrigues*, for example, the claimants' new home was severely damaged. In many of the asbestos cases before this court, it is unclear whether a plaintiff has suffered a compensable injury at all.

In each of the cases subsequent to *Rodrigues*, there was some underlying compensable harm which triggered the emotional anguish. In *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974), the Hawaii Supreme Court permitted a child to recover damages for emotional distress where the child witnessed the death of his step-grandmother. Although the child was not related by blood to the decedent, the *Leong* court approved the application of *Rodrigues* to sustain the mental anguish award.

In another key case, *Kelley v. Kokua Sales and Supply, Ltd.*, 56 Haw. 204, 532 P.2d 673 (1975), the Hawaii Supreme Court declined to sustain emotional damages. The administrator of Kelley's estate sought damages for emotional distress where Kelley suffered a fatal heart attack upon news of his daughter's and granddaughter's death in an automobile accident. Defendant's negligence in Hawaii caused the accident, but decedent received word of the accident in California. The Hawaii Supreme Court applied *Rodrigues* but affirmed the granting of defendant's motion for summary judgment. The court concluded that since the accident occurred in Hawaii and decedent was in California, defendant owed decedent no duty of care to refrain from the negligent infliction of emotional distress.

Finally, in *Campbell, supra*, the Hawaii Supreme Court affirmed an award of emotional damages where the family's dog was negligently destroyed. The trial court awarded the family damages for defendant's negligent handling of the dog and for the family's emotional distress as a result of the dog's death. In upholding the damages for emotional distress, the *Campbell* court specifically held that the *Rodrigues* standard governed and that expert medical testimony concerning the claimant's fear was not necessary in order to award a reasonable amount of damages.

---

**9.** *See Order Re Pretrial Motions Group II Cases* (D. Hawaii November 5, 1988) (Williams, J.), *citing Herber v. Johns–Manville Corp.*, 785 F.2d 79, 82 (3d Cir.1986). By the same reasoning in *Herber*, the subsequent development of a condition associated with objectively verifiable physical impairment in a plaintiff would be a cause of action separate and distinct from any claims relating to asbestos fibers in the lung, pleural plaques or pleural thickening.

*Campbell,* 63 Haw. at 563, 632 P.2d at 1071.

■ The *Rodrigues* court adopted a reasonable person standard for recovery of emotional distress in Hawaii. *Rodrigues,* 52 Haw. at 173, 472 P.2d at 520. Having reviewed the cases in which Hawaii courts applied *Rodrigues,* this court finds as a matter of law that fear based on self-serving declarations is not reasonable absent an underlying compensable harm. *Rodrigues* and its progeny involved cases of mental anguish over past, not prospective, harm.

The Hawaii Supreme Court created a cause of action for mental anguish independent of any claims for physical injuries the claimant personally may or may not have suffered. However, *Rodrigues* did not unleash a cause of action independent of *any* type of underlying compensable harm. We are unaware of any authority in Hawaii which permitted the award of emotional damages in the absence of some underlying compensable harm.

### B.  *Scope of the Rodrigues Standard*

■ Plaintiffs contend that the *Rodrigues* standard for recovery is applicable only to cases not involving physical injury. Where physical injury is present, as plaintiffs contend in these cases, plaintiffs argue that mental anguish is compensable as an element of general damages. Plaintiffs are correct to the extent that any mental anguish claimants suffered as a result of asbestos-induced physical damage is compensable as an element of general damages.

■ This court, in fact, instructed the jury to award damages for any mental suffering *caused* by the defendants. Although plaintiffs claim fear of cancer in the present, such fear relates to future events which may or may not have had their genesis in the defendants' alleged wrongdoing in the past. This fear relates to a specific event which may or may not occur in the future. Such fear can hardly be characterized as *general* mental anguish for harm *caused* in the past by the defendants.

Alternatively, plaintiffs argue that even if plaintiffs suffered no physical injuries, the *Rodrigues* standard does not require proof of "physical effects," such as testimony from psychiatrists or counselors. For support, plaintiffs in part rely on *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972) for the proposition that Hawaii law does not require the "opinion of any witness ... to fix a reasonable amount" when awarding damages for emotional distress. *Dold,* 54 Haw. at 21, 501 P.2d at 371. Not only is this portion of the *Dold* opinion *dictum,* plaintiffs' reliance on *Dold* is also misplaced because the *Dold* instructions involved the standard for emotional distress as part of general damages. As this court has found, fear of cancer damages are not part of general damages.

■ Defendants urge this court to find that Hawaii does not permit recovery for fear of cancer in strict products liability cases. Because strict products liability is not grounded in principles of fault, defendants maintain that recovery for mental anguish would be virtually unlimited. Defendants distinguish *Rodrigues* from strict liability cases by noting that *Rodrigues* was a negligence action where the negligence principle of foreseeability served as a limit on recovery.

However, the recovery of emotional distress damages is an independent cause of action in Hawaii. As stated by the *Rodrigues* court, "the interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection." *Rodrigues,* 472 P.2d at 520. The jury was given the *Rodrigues* negligence instructions on the issue of emotional distress damages. Therefore, the fear of cancer instructions were not tied to plaintiffs' strict product liability claims, but were given as an independent cause of action sounding in negligence.

### C.  *The Governing Standard for Emotional Distress*

■ Accordingly, this court holds that *Rodrigues* requires a compensable harm underlying the emotional distress before recovery may be had for mental anguish. Plaintiffs may have a generalized fear of cancer, but that fear would not be reasonable absent a knowledge of functional im-

pairment. All cases subsequent to *Rodrigues* involved a type of harm which triggered the mental anguish. A reasonable person, exercising due diligence, should know that of those exposed to asbestos, only a small percentage suffer from asbestos-related physical impairment and that of the impairment group fewer still eventually develop lung cancer.[10]

■ Should a plaintiff satisfy this implied requirement of *Rodrigues*, then the *Rodrigues* "cannot adequately cope" standard would apply to that particular case. The opinion of an expert tending to show a functional impairment based on pulmonary and roentgenographic tests would establish a prima facie case for physical impairment. Such tests would include simple spirometry, gas diffusion capacities, measured exercise capacity and arterial blood gases.[11]

■ This implied requirement of an underlying compensable harm should not be confused with former requirements such as "impact" and "physical manifestation of emotional distress."[12] This court finds that *Rodrigues* did indeed reject those former bars to recovery. However, this court maintains that *Rodrigues* did not dispense with the requirement that there must be some type of compensable harm, either to the plaintiff, a third party or property, in order to trigger the mental anguish.

## III. STATUTE OF LIMITATIONS

■ This court has ruled that a cause of action for bodily harm and emotional distress caused by asbestos exposure does not arise until an objectively verifiable functional impairment develops. The two-year statute of limitations in Hawaii for personal injury begins to run when the claimant knew, or through the exercise of reasonable diligence should have known

"of his injury, the defendant's negligence ... and the causal connection between the two." *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 456 (9th Cir.1986). Therefore, the statute of limitations does not begin to run until plaintiffs knew or should have known that they have suffered the functional impairment, that defendants manufactured a defective product and that there exists a causal connection between the two.

A consideration of when the statute of limitations would begin to run for emotional damages without underlying compensable harm provides further support for requiring such harm. Without a triggering event, a plaintiff could arbitrarily choose a date on which that plaintiff claims he or she could not adequately cope with fear of cancer. This possibility seriously undermines the policy that at some point in time the law should not recognize a claim.

Conversely, defendants could gather evidence that plaintiffs knew or should have known at a time convenient for the defendants that plaintiffs' prior history of asbestos exposure might lead to cancer. A medical diagnosis of pleural changes would not necessarily defeat such an argument because such changes are, at bottom, markers of asbestos exposure, exposure of which most plaintiffs surely were well aware before diagnosis.[13] A regime of recovery for emotional distress not anchored to an underlying compensable harm presents boundless headaches in adjudicating statute of limitations problems.

## IV. TRIAL GROUP II MOTIONS FOR J.N.O.V.

Defendants Fibreboard, Pittsburgh Corning Corporation, Owens–Corning Fiberglas,

---

**10.** For example, one study found, with respect to the general population of Hawaii, a risk ratio of cancer mortality among the Pearl Harbor Naval Shipyard workers studied to vary between 1.4 and 1.7, depending on the length of exposure. Kolonel, "Cancer Occurrence in Shipyard Workers Exposed to Asbestos in Hawaii," *Cancer Research* 45, 3924 (August 1985). The above study indicated that the incidence of lung cancer development among shipyard workers would be approximately sixty-seven per million men per year. *Id.* at 3925.

**11.** *Guides to the Evaluation of Permanent Impairment* at 111–14.

**12.** *See Leong, supra,* for a good discussion of the previous law.

**13.** Absent functional impairment, one study noted that the main benefit from detecting asbestos-induced benign pleural disease is the use of these abnormalities as markers in epidemiologic investigations. Rosenstock and Hudson at 401.

the Celotex Corporation and Raymark Industries ("defendants") move for judgment notwithstanding the verdict, or in the alternative for new trial or for remittitur with respect to the jury verdicts awarded plaintiffs Renio, Kuon, Yonashiro, Sakauye, Chung and for new trial or for remittitur with respect to Lau. The jury made the following awards to plaintiffs: Renio received $15,000 in general damages and $28,500 in special damages; Kuon received $15,000 in general damages and $21,000 in special damages; Yonashiro received $10,-000 in general damages and $23,500 in special damages; Sakauye received $15,000 in general damages and $20,000 in special damages; Chung received $85,000 in general damages and $15,500 in special damages; and Lau received $105,000 in general damages and $45,000 in special damages. Defendants moved for directed verdict after the close of plaintiffs' case-in-chief and renewed their motions at the close of all the evidence.

Defendants attack the jury awards on two general grounds. First, defendants argue that plaintiffs failed to sufficiently identify defendants' products as a substantial factor contributing to plaintiffs' injuries. Second, defendants aver that the jury verdicts were not supported by the medical evidence relating to physical injuries and emotional distress.

### A. Legal Standards

#### 1. Judgment Notwithstanding the Verdict

■ The standard which this court must apply in ruling upon a directed verdict is the same standard as that for judgment notwithstanding the verdict. *Hallmark Industry v. Reynolds Metals Co.*, 489 F.2d 8, 13 (9th Cir.), *cert. denied* 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1973). This court denied defendants' motions for directed verdict in keeping with the better practice that the trial court should reserve ruling upon a motion for directed verdict until after the jury returns a verdict. 9 Wright & Miller, *Federal Practice and Procedure:* Civil § 2533. A motion for judgment notwithstanding the verdict may be granted only if the motion for directed verdict should have been

granted. *Walker v. KFC Corp.*, 515 F.Supp. 612, 615 (S.D.Cal.1981), *aff'd in part and rev'd in part on other grounds*, 728 F.2d 1215 (9th Cir.1984).

■ When reviewing the propriety of this court's denial of defendants' renewed motion for directed verdict at the close of all the evidence, this court will judge the case as it stood at the time the renewed motion was denied. Wright & Miller, *supra*, § 2534. Even though this court may have erred in denying defendants' first motion for directed verdict at the close of plaintiffs' evidence, such error is cured if testimony admitted on defendants' behalf repairs the shortcomings of plaintiffs' case. *Id.; see also Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 903 (3d Cir.1987); *Peterson v. Hager*, 724 F.2d 851, 854 (10th Cir.1984); *Newman v. Brengle*, 250 F.2d 660, 661 (7th Cir.1957), *cert. denied*, 356 U.S. 951, 78 S.Ct. 916, 2 L.Ed.2d 844 (1958); *Auto Transport v. Potter*, 197 F.2d 907 (8th Cir.1952).

■ This court may grant motions for judgment notwithstanding the verdict only when there can be but one reasonable conclusion as to the proper judgment. *Peterson v. Kennedy*, 771 F.2d 1244, 1252 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). When ruling on a motion for judgment notwithstanding the verdict, "the trial judge cannot reweigh the evidence or consider the credibility of the witnesses." *Kay v. Cessna Aircraft Company*, 548 F.2d 1370, 1372 (9th Cir.1977). This court must view all evidence in the light most favorable to the non-moving party. *Id.*

#### 2. New Trial

■ Federal Rule of Civil Procedure 59 authorizes new trials "for any of the reasons for which new trials have heretofore been granted in actions at law ..." As opposed to the standard for judgment notwithstanding the verdict, a district court in its discretion may weigh the evidence in determining whether to grant a new trial. Wright & Miller, *supra*, § 2531. A district court may grant a new trial for a variety of reasons, including the prevention of what it

finds to be a miscarriage of justice. *City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1036 (9th Cir.1983).

### 3. Remittitur

■ Remittitur is appropriate under Federal Rule of Civil Procedure 59 for any damage award which this court in its discretion finds excessive. Wright & Miller, *supra*, § 2815; *see also Minthorne v. Seeburg Corp.*, 397 F.2d 237 (9th Cir.1968). This court may deny any motion for new trial conditional upon plaintiffs' filing of a remittitur in a stated amount. Wright & Miller, *supra*, § 2807. If plaintiff does not file such remittitur, the motion for new trial will be granted. Wright & Miller, *supra*, § 2815.

### B. *Product Identification*

■ The defendants contend that no reasonable juror could find that plaintiffs identified their particular products sufficiently as a matter of law to link defendants' products with plaintiffs' alleged injuries. This court has previously ruled that plaintiffs need not show that a particular plaintiff was working with a particular defendant's product on a certain ship; rather, "the presence [of the product at the shipyards] is enough." Proceedings at Trial, Volume X, at 2105–2106. This ruling applies as the law of the case. This court is unaware of any new law within the Ninth Circuit which would warrant a reversal of this ruling.

This court finds that each plaintiff's testimony could support the jury's finding that every plaintiff worked in the vicinity of asbestos ripout and/or installation operations. From the testimony of John Kaili, Martin Sampaga, Peter Demmer, the deposition testimony of John Kaili and the Offer of Proof of Harry Abilla, the jury could have reasonably concluded that each defendant's product was present at the asbestos ripout and/or installation operations. A Dr. Kenneth Cohen testified that each plaintiff could have been within the range of asbestos exposure in the shipyards without necessarily working directly with asbestos product. Trial Transcript at 276–79. Viewed as a whole, this evidence forms a sufficient basis from which the jury could

have reasonably found that the defendants' products were substantial factors contributing to plaintiffs' alleged injuries.

Defendants additionally assert that production of some asbestos products was halted well before plaintiffs could have conceivably been exposed to these products. As this court has ruled on prior occasions, cessation of production is not determinative where asbestos-containing products often are warehoused for years before being used. *Order Re: Pretrial Motions, Group II Cases* (D. Hawaii November 5, 1988). Equally unavailing are defendants' arguments that the jury verdicts were against the weight of the evidence where the jury apportionment of liability did not correspond to the evidence. Incongruous jury verdicts will be upheld so long as there was a reasonable basis for the finding. *Jackson v. Johns–Manville Sales Corp.*, 727 F.2d 506, 524 (5th Cir.1984), *vacated in part en banc, and questions certified to State Supreme Court*, 750 F.2d 1314 (5th Cir.1985).

### C. *Medical Evidence*

■ Plaintiffs' expert witness, Dr. Druger, identified "pulmonary function abnormalities" in Mr. Sakauye as the result of asbestos exposure. Trial Transcript at 994. Dr. Druger also testified that Mr. Chung suffered an impairment due to asbestosis. Trial Transcript at 1595–98. Accordingly, defendants' motions for judgment notwithstanding the verdict, or in the alternative for new trial or remittitur regarding Mr. Sakauye and Mr. Chung are hereby DENIED.

■ Concerning Mr. Lau, defendants are not moving for judgment notwithstanding the verdict but are only moving for a new trial or remittitur on the basis that the jury could not have reasonably found that Mr. Lau suffered from fear of cancer. This argument must fall because this court refuses to speculate whether the amount of compensatory damages awarded to Mr. Lau included any sum for his alleged cancerphobia. Accordingly, defendants' motions for new trial or remittitur regarding Mr. Lau on the issue of compensatory damages are hereby DENIED.

Regarding plaintiffs Renio, Kuon and Yonashiro, the evidence is uncontroverted that none of these men are suffering from a functional impairment due to asbestos exposure. In accordance with this court's ruling on physical injury and cancerphobia, *supra,* the lack of any evidence pertaining to an objectively verifiable functional impairment leads but to one conclusion: that the jury's award of damages to plaintiffs Renio, Kuon and Yonashiro for asbestos-related injuries or for fear of cancer is unsupported by the record. Accordingly, defendants' motions for judgment notwithstanding the verdict regarding plaintiffs Renio, Kuon and Yonashiro are hereby GRANTED.

### D. *Remittitur*

### 1. Special Damages

This court finds that the jury's awards for special damages as to plaintiffs Chung, Lau and Sakauye were excessive.[14] The jury's awards exceeded even the evidence which plaintiffs' expert presented. Defendants correctly argue that any amount the jury awarded for costs of transportation, as plaintiffs contend, was excessive because plaintiffs simply failed to produce evidence to that effect.

Therefore, this court will deny defendants' motions for new trial with respect to the jury's award of special damages to Chung, Sakauye and Lau on the condition that these plaintiffs file a remittitur for the cost of future medical monitoring, discounted to present value, in the amount actually substantiated by plaintiffs' expert testimony. Such remittitur must be filed within thirty days from the date this order is filed or defendants' motions for new trial with respect to plaintiffs Sakauye, Chung and Lau on the issue of special damages will be deemed granted.

### 2. Compensatory Damages

Defendants also maintain that all compensatory damage awards were excessive due to the jury's award for fear of cancer where there was no evidence of functional impairment proximately caused by defendants. It would be pure speculation for this court to determine which portion of the compensatory damages was correctly awarded for physical injuries and which portion may have been incorrectly awarded for fear of cancer. Therefore, defendants' motions for remittitur regarding compensatory damage awards are hereby DENIED.

### E. *Conditional Grant of Certain Motions for New Trial*

Because this court has granted defendants' motions for judgment notwithstanding the verdict with respect to plaintiffs Kuon, Renio and Yonashiro, Federal Rule of Civil Procedure 50(c) requires this court to conditionally determine whether defendants' motions for new trial concerning plaintiffs Kuon, Renio and Yonashiro should be granted or denied should the judgment be vacated or reversed on appeal. This court hereby conditionally GRANTS defendants' motions for new trial with respect to plaintiffs Renio, Kuon and Yonashiro.

This court within its discretion conditionally finds the award of damages excessive in the cases of Renio, Kuon and Yonashiro because those plaintiffs were not functionally impaired in any way. Additionally, this court finds that the evidence relating to these plaintiffs' fear of cancer is unpersuasive. In making this conditional ruling for new trial, this court finds that a miscarriage of justice would result if these verdicts were allowed to stand.

Accordingly, defendants' motions for judgment notwithstanding the verdict, or in the alternative for new trial or for remittitur are hereby GRANTED in part and DENIED in part to the extent provided herein.

IT IS SO ORDERED.

---

**14.** Because this court has granted defendants' motions for judgment notwithstanding the verdict as to plaintiffs Renio, Kuon and Yonashiro, defendants' remaining motions as to these plaintiffs are moot.