**Mr. and Mrs. Henry Anthony PLAISANCE, Jr.**

v.

**TEXACO, INC. and Crosby Marine Services, Inc.**

**Civ. A. No. 89–2645.**

United States District Court, E.D. Louisiana.

Jan. 30, 1990.

Joseph J. Weigand, Jr., Houma, La., for plaintiffs.

Robert B. Acomb, Jr., J. Ralph White, New Orleans, La., for Crosby Marine Services, Inc.

David E. Faure, New Orleans, La., for Texaco, Inc.

McNAMARA, District Judge.

Before the court is the Motion of Defendants, Texaco, Inc. and Crosby Marine Service, Inc., to Dismiss Certain Claims Pursuant to Fed.R.Civ.P. 12(b)(6), or for Partial Summary Judgment. Plaintiffs, Mr. and Mrs. Henry Anthony Plaisance, Jr., oppose this Motion. The Motion, set to be heard on Wednesday, January 24, 1990, is before the court on briefs, without oral argument.

Defendants move this court to dismiss Plaintiffs' claims that are attributable to emotional injury, arguing that Plaintiffs have not stated a cause of action under either the Jones Act or under general maritime law. The seminal case on this issue is *Gaston v. Flowers Transp.*, 866 F.2d 816 (5th Cir.1989), which considered a seaman's action to recover for mental anguish resulting from watching his half-brother being crushed to death between two vessels. The court held that the seaman who did not show that he reasonably believed he was in actual physical danger when the accident occurred, could not recover under the Jones Act for mental anguish. The court examined the legislative history of the Jones Act, and concluded that "even a liberal interpretation of the Jones Act [does not require] extending recovery to those who suffer purely emotional injury." *Id.* at 817.

The Fifth Circuit decision of *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 (5th Cir.1986), however, allowed a plaintiff to recover for emotional injuries "from fear of developing cancer where his fear [was] reasonable and causally related to the defendant's negligence." *Id.* at 318. The plaintiff in *Hagerty* was drenched in cancer-causing chemicals. The actual physical impact in *Hagerty* differentiated that plaintiff's claim from the claim before the *Gaston* court. The *Gaston* plaintiff never feared for his own safety, and did not experience a physical tort that was causally related to his claim of emotional injury.

The *Gaston* court was concerned about extending liability to situations of a bystander's emotional reactions for two reasons. First, the court noted that allowing this type of recovery "would represent a major departure from existing jurisprudence, as well as a vast extension of potential employer exposure to damages." 866 F.2d at 819. Second, the court found "something incongruous" in allowing this type of recovery for seamen since "[t]hese [persons] have knowingly and voluntarily chosen callings which, while today perhaps not fairly termed dangerous, yet do involve braving certain hazards and are traditionally not well suited to the squeamish or faint-

hearted." *Id.* at 820. The court concluded, therefore, that allowing such a recovery is a decision that would be more appropriately left for the legislature. *Id.*

The court also considered whether Mr. Gaston could recover for finding himself in a "zone of danger." *Id.* The court noted that while Louisiana law allows for such a recovery, Gaston made no showing that he ever thought himself to be in danger. As such, the court did not decide the issue. In concluding, the court limited its holding as follows:

> We do not hold today that no recovery can be had under the FELA/Jones Act for a purely emotional injury resulting from actions directed against the plaintiff or an occurrence that happened to him. That fact situation is not presented today. But whatever merit allowing recovery for purely emotional injury may have or may lack, we see none in allowing mere crewmen-bystanders to recover for witnessing the misfortune of another. *Id.* at 821.

In the instant litigation, Mr. Plaisance's claim is distinguishable from both *Hagerty* and *Gaston*. Unlike the *Hagerty* plaintiff, Plaisance did not experience any actual physical impact. Mr. Plaisance's claim is distinguishable from the *Gaston* claim, however, because Plaisance perceived himself to be in actual danger. Plaintiff witnessed a fire while working as the captain of the tug TOMMY CROSBY. The fire was extinguished, the TOMMY CROSBY was not damaged, and no one was injured as a result of the fire. Plaintiff did not participate in fighting the fire, and persons on other vessels in the vicinity of the fire escaped the fire by going to the vessel upon which Plaisance was working. Objectively, therefore, Plaintiff did not seem to be in a "zone of danger" during the fire.

While the record contains no evidence that Plaintiff was actually in danger during the fire, he nevertheless perceived himself to be in danger. In his deposition, Plaintiff reported that he asked to be relieved from his duties because he was upset about the accident. Plaintiff stated that he was dis-

turbed "[t]hat we could have all burned and all. That's what I told him, you know, that I could have all—blew them up and all, you know.... Well, that we could have all burned, you know, with the fire." Deposition, p. 106. Plaintiff alleges that he still dreams about the accident. He reported, "I see that [in his dreams]—the fire, you know. Those men running, you know. Running on my boat and all." Deposition, p. 110.

The facts of this case reveal that Mr. Plaisance's situation is more closely analogous to the *Gaston* decision rather than the situation in *Hagerty*. Plaintiff suffered no physical impact which led to his alleged emotional injury. Instead, Plaintiff claims injury only as a result of watching the fire. Nobody was injured in the blaze, Plaintiff's vessel was not damaged, and Plaisance did not undergo the trauma of watching someone else being seriously injured. Moreover, Plaintiff was not, objectively, in a zone of danger. Plaintiff, however, perceived himself to be in actual physical danger during the fire. While the reasonableness of Plaintiff's fear is ultimately a fact question, this court's reading of *Gaston* indicates that a plaintiff's subjective belief that he was in danger, standing alone, is probably insufficient to give rise to a cause of action for emotional injury under the Jones Act. In addition, Plaintiff cites no authority which indicates that a seaman can recover for a purely emotional injury under the general maritime law. Since the court is unaware of any authority in this regard, the court finds that Plaintiffs do not state a viable cause of action under the general maritime law.

■ Since the court concludes that Plaintiffs have not stated a viable cause of action for emotional injury in this matter, the court finds that this lawsuit should be dismissed in its entirety. Defendants' Motion only seeks to dismiss Plaintiffs' claim for damages as a result of witnessing the fire, stating that Defendants will challenge Plaisance's right to receive maintenance and cure, as well as Plaintiffs' claim for damages resulting from an alleged slip and fall that occurred approximately two hours af-

ter the fire incident. The court notes that Plaintiffs' complaint does not make a claim for maintenance and cure. It is well-settled that a seaman has the right, under the general maritime law, to recover maintenance and cure irrespective of the negligence or fault of his employer unless the injury was brought about by his own willful misbehavior. Martin J. Norris, The Law of Seaman § 678 (3d. ed. Supp.1984). Here, however, there is no claim for maintenance and cure before the court.

Regarding Mr. Plaisance's alleged slip and fall, this incident is also not pled in Plaintiffs' complaint, and it is not causally related to the fire. After the fire had been extinguished, the flotilla proceeded to Texaco's camp at Caillou Island. At that point the TOMMY CROSBY stopped at the Texaco fuel dock in order to fill its fuel tanks. Mr. Plaisance docked the tug next to the workover barge to transfer fuel from the tanks of the TOMMY CROSBY to the workover barge. During the process, diesel fuel was spilled on the deck of the tug, and Mr. Plaisance allegedly slipped and fell, landing on his back and head. This accident occurred at least two to three hours after the fire incident. Plaisance did not record his alleged slip and fall on the boat log, nor on the handwritten accident report which he signed after the accident. Moreover, he did not report this incident to anyone from Crosby or Texaco.

The court finds no connection between the fire and the slip and fall. Plaisance's deposition does not allege any connection between the incidents, and Plaintiffs' memorandum in opposition to Defendants' Motion does not indicate that the two accidents are connected in any way. The court's own analysis of the record does not reveal any causal link between the accidents. The slip and fall is not related in terms of time, location, or circumstances to the fire. Accordingly, since the slip and fall has not been pled separately, the court holds that this issue is not properly before the court at this time.

Accordingly, IT IS ORDERED that Defendants', Texaco, Inc. and Crosby Marine Services, Inc., Motion to Dismiss Certain

Claims Pursuant to Fed.R.Civ.P. 12(b)(6), or for Partial Summary Judgment, should be and is GRANTED dismissing Plaintiffs' complaint in its entirety since the court finds that Plaisance's other potential causes of action have not been pled and are therefore not properly before the court. Judgment will be entered accordingly.