Mr. & Mrs. Henry PLAISANCE, Jr.,
Plaintiffs–Appellants,

v.

TEXACO, INC., et al.,
Defendants–Appellees.

No. 90–3183.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1991.

CROSBY, towing a workover barge from one well location to another in Louisiana coastal waters. The TOMMY CROSBY was under contract to Texaco, Inc. A second tug, the VERGIE CENAC, was tied to the rear of the barge. Apparently one of the barge's spuds projected below its bottom and came in contact with an underwater 4–inch gas pipeline. The pipeline ruptured, the gas escaped, and an explosion and fire ensued.

The TOMMY CROSBY had a relatively short tow line. Plaisance immediately backed up to the barge and the workers on the barge and the crew of the VERGIE CENAC quickly moved to the safety of the TOMMY CROSBY. The tow was disconnected and the TOMMY CROSBY was taken a short distance off. It was immediately apparent that the fire was confined to the rear of the barge and the front of the trailing tug; the tether lines between the two burned and separated and the VERGIE CENAC began to drift. Upon instructions from the Texaco supervisor aboard, Plaisance reconnected the tow lines, pulled the barge away from the rupture site and spudded it in place. The fire was then extinguished by the combined crews aided by the crews of other vessels which were attracted by the fire. The entire operation took less than 30 minutes.

No one was injured by the explosion or fire. The flotilla (the two tugs and the barge) then proceeded to the nearby Texaco camp, the barge was spudded and the TOMMY CROSBY went to a Texaco fuel dock in the vicinity to get a load of diesel for transfer to the barge. The fuel was transferred and the barge was then towed in for repairs. Several hours later, upon arriving at the repair dock, Plaisance asked to be relieved of duty because he did not feel well.

Plaisance first went to a local hospital for a few days and then transferred to a psychiatric hospital where he remained for 45 days. According to the treating psychiatrist, Plaisance was suffering from post-traumatic stress disorder and depression resulting from his perception that he and the others could have been injured or killed

Joseph J. Weigand, Jr., Weigand, Weigand & Meyer, Houma, La., for plaintiffs-appellants.

David E. Faure and John D. Fitzmorris, Jr., New Orleans, La., for Texaco, Inc.

J. Ralph White, and Robert B. Acomb, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Crosby Marine.

Before POLITZ, WILLIAMS, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

Today we determine whether there can be recovery under the Jones Act for a purely emotional injury. Concluding for the reasons assigned that such recovery is permissible, but that the claims of appellants herein factually do not qualify, we reach the same result as did the district court and affirm its dismissal.

*Background*

Henry A. Plaisance, Jr. had over 30 years experience as a tugboat captain, the last 10 of which had been in the employ of Crosby Marine Service, Inc., when, on January 29, 1989, he allegedly sustained a significant emotional injury as a result of an allision with an underwater gas line. On that date Plaisance was operating the tug TOMMY

in the explosion and fire. As of the time of the disposition in the trial court, Plaisance continued to receive periodic psychiatric care and continued to express an inability to return to work.

Plaisance and his wife filed the instant personal injury action, invoking the Jones Act, 46 U.S.C.App. § 688, and general maritime law against Crosby, and general maritime law against Texaco, claiming total disability from an emotional injury. Defendants moved to dismiss the claims as not being cognizable under either the Jones Act or general maritime law. The district court agreed and dismissed the Plaisance claims, 735 F.Supp. 686. They timely appealed.

### Analysis

■ The Plaisances seek recovery under the Jones Act[1] for a purely emotional injury. The Jones Act, and its underlying statutory structure, the Federal Employers' Liability Act, 45 U.S.C. §§ 51 *et seq.*, are silent as to whether injuries, within their meaning, include an injury which is entirely mental. Appellees contend that our recent decision in *Gaston v. Flowers Transp.*, 866 F.2d 816 (5th Cir.1989), forecloses this inquiry. It does not. *Gaston* was a bystander case and we very carefully noted its limitations, stating:

> We do not hold today that no recovery can be had under the FELA/Jones Act for a purely emotional injury resulting from actions directed against the plaintiff or an occurrence that happened to him.

*Id.* at 821. In the case at bar Plaisance alleges an occurrence that happened to him. We therefore here address an issue of first impression for our court.

The Supreme Court recently considered the issue of recovery for purely emotional injuries under the FELA in *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), but declined to decide whether the FELA permitted such claims. The Court, did, however, opine that

> [t]he question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common law developments, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*Id.* at 568, 570, 107 S.Ct. at 1417, 1418 (citations omitted). The Supreme Court thus left open the question whether one may recover for purely emotional injuries under the FELA, suggesting that the federal courts consult the common law for guidance. *Buell*, 480 U.S. at 568, 107 S.Ct. at 1417; *Gaston*, 866 F.2d at 820. We do so, mindful that "[w]hat constitutes negligence for the statute's purpose is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949); *see also Dice v. Akron, C. & Y.R. Co.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952).

The comments by the Supreme Court in *Buell* generally have been viewed as an open invitation to the lower federal courts to explore the possibility of recovery under the FELA for a purely emotional injury. *Moody v. Maine C.R. Co.*, 823 F.2d 693 (1st Cir.1987). Other than the Ninth Circuit in the underlying *Buell* decision, 771 F.2d 1320 (9th Cir.1985), and its progeny, *e.g.*,

---

**1.** In light of our ultimate disposition of the Plaisance claims, we need not resolve the parallel question whether the general maritime law would permit recovery for a purely emotional injury.

*Taylor v. Burlington Northern Railway Co.*, 787 F.2d 1309 (9th Cir.1986), no circuit has as yet so ruled. We previously have brushed against the edges but have not dispositively addressed this issue.

We first considered the matter in *Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315 (5th Cir.1986), wherein the plaintiff sought recovery for his fear of developing cancer as a result of being soaked with toxic chemicals. The district court granted defendant a summary judgment stating that Hagerty had no cause of action because he had not sustained a physical injury. We reversed, seizing on the fact that Hagerty had been doused with the toxic chemicals and, as a result, temporarily had experienced dizziness, leg cramps, and a stinging sensation in his extremities. We found a cause of action. In remanding, we stated that Hagerty's "present fear or anxiety due to the possibility of contracting cancer constitutes a present fact of mental anguish and may be included in recoverable damages." *Id.* at 317. Although we declined to decide whether emotional injuries alone could serve as a basis for recovery, in dicta we indicated support for the proposition. We first noted that the Jones Act was "intended to provide coverage for all work-related 'injuries,' whether characterized as mental or physical." *Id.* at 318. We then criticized the negligence rules limiting recovery for emotional distress to claims accompanied by a physical injury or physical impact, stating that these rules were unrealistic and provided dubious mechanisms for objectively assuring that an alleged mental injury was not feigned. "With or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress arising from fear of developing cancer where his fear is reasonable...." *Id.* at 318.

We next considered the matter in *Netto v. Amtrak*, 863 F.2d 1210 (5th Cir.1989), where the plaintiff based his FELA claim on a nervous breakdown which allegedly resulted from either deliberate harassment or negligent treatment by the employer. The trial court indicated a willingness to permit recovery under the FELA for purely emotional injuries but granted summary judgment to the defendant because Netto had failed to make the required showing of unconscionable abuse or outrageous conduct.[2] On appeal we affirmed on the ground advanced by the trial court. In doing so we declined to decide if an FELA plaintiff may recover for purely emotional injuries.

In our most recent foray, *Gaston v. Flowers Transportation*, the plaintiff sought Jones Act and general admiralty law recovery for the emotional injury he suffered as a result of seeing his half-brother crushed to death between two vessels. We rejected the argument that *Hagerty* provided the basis for recovery for a purely emotional injury. Rather, we noted that while *Hagerty* "did observe that a Jones Act recovery was possible without physical impact, that statement was necessarily dictum; for Mr. Hagerty did suffer impact, having been drenched with cancer-causing chemicals." 866 F.2d at 819. *Gaston* interpreted *Hagerty* as leaving open the question whether a purely emotional injury is recoverable under the Jones Act. Further, and of greater importance, we observed that "Hagerty's recovery was one ... based on an event directly affecting *him.* In today's case, Mr. Gaston seeks recovery for a bystander injury that resulted from witnessing the death of *another.*" *Id.* at 819. We indicated that even if we were to permit recovery for purely emotional injuries, we would not do so in the bystander context.[3] Finally, we rejected Gaston's zone of danger claim because Gaston did not make a showing that he thought himself to be in danger. We expressly noted, however, as quoted above, that we were not barring recovery under

---

2. The trial court only addressed Netto's claim for intentional infliction of emotional distress and not his claim for negligent infliction of emotional distress. Netto did not present this latter claim on appeal; we did not address it. *Netto,* 863 F.2d at 1214 n. 4.

3. Bystander liability is the recovery of damages for witnessing the death or injury to another without significant injury or fear to the witness. *Gaston,* 866 F.2d at 817 n. 1.

the Jones Act "for a purely emotional injury resulting from actions directed against the plaintiff or an occurrence that happened to him." *Id.* at 821.

Although presented with these opportunities, we previously have not resolved the question whether the FELA permits recovery for purely emotional injuries. Our colleagues in the First, Third, Fourth, Sixth, and Seventh Circuits similarly have declined the *Buell* invitation.

In *Moody v. Maine Cent. R. Co.*, 823 F.2d 693 (1st Cir.1987), the plaintiff's FELA complaint alleged that his employer's negligent harassment caused emotional distress with attendant physical symptoms. The First Circuit upheld the trial court's grant of summary judgment to the defendant concluding that Moody had failed to present sufficient evidence of causation. The court opted against exploring the possibility of recovery under the FELA for emotional injuries unaccompanied by physical injury which *Buell* signaled.

The plaintiff's FELA claim in *Holliday v. Conrail*, 914 F.2d 421 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991), alleged that his employer negligently assigned him to a position for which he was unqualified, that he made several errors and was almost killed, and that as a result he suffered emotional injuries with physical manifestations. Rather than apply a negligence standard to the facts of the case the Third Circuit assessed Holliday's claim in an *ad hoc* manner, focusing on the "nature of his injury and the character of the tortious activity." *Id.* at 423 (brackets omitted) (quoting *Buell*, 107 S.Ct. at 1417). The court upheld the grant of summary judgment in favor of the defendant finding that the "allegedly tortious activity ... was simply an ordinary management decision and was not of such a character that [the employee's] emotional reaction and related physical consequences constituted an 'injury' compensable under the FELA." *Id.* at 425. By emphasizing the narrowness of its opinion and its fact-specific basis, the majority

opinion took care to reflect that it was not deciding whether recovery for purely emotional injuries is permitted under the FELA.[4]

Similarly, the plaintiff in *Elliott v. Norfolk & Western Ry. Co.*, 910 F.2d 1224 (4th Cir.1990), based her FELA claim on allegations that her employer's mistreatment had resulted in emotional distress. In upholding summary judgment for the defendant the Fourth Circuit found that the plaintiff had failed to make a sufficient showing of unconscionable abuse or outrageous conduct, deemed an essential element of her claim. The court expressly declined to decide "whether one may recover under the FELA for purely emotional injuries without additional physical symptoms...." *Id.* at 1229.

Meanwhile, in *Adkins v. Seaboard Sys. R.R.*, 821 F.2d 340 (6th Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987), the plaintiff's FELA action alleged the intentional infliction of emotional distress resulting from a threatened discharge for insubordination. The Sixth Circuit distinguished *Buell* on the ground that it referred only to negligent conduct giving rise to an FELA claim and held "that this claim of an intentional tort resulting in a purely emotional injury is not cognizable under the FELA." *Id.* at 342. Whether the Sixth Circuit would likewise bar an FELA claim for the negligent infliction of emotional distress was left open in *Adams v. CSX Transp., Inc.*, 899 F.2d 536 (6th Cir.1990). Adams claimed the negligent infliction of emotional distress by his employer's failure to provide an emotionally safe workplace, leading to a severe depression which required hospitalization. The Sixth Circuit upheld the magistrate judge's ruling in favor of the defendant on the ground that Adams failed to establish either the breach of the employer's duty to provide an emotionally safe workplace or the foreseeability of the emotional injury. The court expressly stated that it was not deciding whether there might be recovery for a

---

**4.** Judge Mansmann dissented because she was convinced that "as a matter of law that the

FELA permits a recovery for emotional distress." *Id.* at 427.

purely emotional injury under the FELA.[5] *See also Stoklosa v. Conrail*, 864 F.2d 425, 426 (6th Cir.1988) ("We leave for another day the question of whether negligent infliction of emotional distress resulting in emotional injury with no verifiable physical manifestation is actionable under FELA.").

Finally, the circuit roundup includes the decisions by the Seventh Circuit. In *Hammond v. Terminal R. Ass'n.*, 848 F.2d 95 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989), that court reiterated its pre–*Buell* position that "the FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact." *Id.* at 96. This position was reaffirmed in *Gillman v. Burlington N.R.R. Co.*, 878 F.2d 1020 (7th Cir.1989). Gillam invoked the FELA, alleging an emotional injury resulting from an accident in which a co-worker was killed. The trial court indicated that this cause of action was permitted under the FELA but dismissed the complaint because it failed to state a claim for negligent infliction of emotional distress under Illinois law. The Seventh Circuit affirmed on that basis and opted not to decide whether an action for negligent infliction of emotional distress, unaccompanied by physical contact or the threat of physical contact, is cognizable under the FELA.

Excepting our colleagues in the Ninth Circuit, our circuit brethren have indicated a reluctance to field the *Buell* pitch. We end that reluctance today, persuaded that an emotional injury can be every bit as harmful, debilitating, and destructive of the quality of one's life as a physical injury. We therefore hold that a claim for an emotional injury caused by emotional distress negligently inflicted, even without an accompanying physical injury or physical contact, is cognizable under the FELA.

Now we must articulate a rubric to govern the recovery for such claims, no mean task.

### The New Rubric

 The Supreme Court suggested an examination of the common law in our quest for guidance. We find no universal rule with which to assess the negligent infliction of emotional injury. The states essentially employ four basic paradigms: (1) physical injury or impact; (2) zone of danger; (3) bystander; and (4) full recovery. Comment, *A New Tort in California: Negligent Infliction of Emotional Distress (For Married Couples Only)*, 41 Hastings L.J. 447 (1990) (hereinafter *A New Tort*).

The physical injury or impact rule permits recovery for emotional injury provided there is some physical contact. The ostensible justification for this requirement is that it affords a semblance of a guarantee that the mental injury is genuine. *Restatement (Second) of Torts* § 436 A comment b (1965); W. Keeton, *Prosser and Keeton on Torts* 363 (5th ed. 1984). It provides a bright line basis for recovery for an emotional injury. This rule has been criticized, however, as being arbitrarily underinclusive for there are genuine mental injuries that are not accompanied by a physical injury or impact.[6] *Buell*, 480 U.S. at 569 n. 18, 107 S.Ct. at 1417 n. 18 ("The American Law Institute urges that as long as the distress is 'genuine and severe,' bodily harm should not be required."); Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury*, 36 U.Fla.L.Rev. 333, 337 (1984) (hereinafter *The Bell Tolls*).

The zone of danger doctrine provides for the recovery for emotional injuries resulting from the witnessing of peril or harm to another if the plaintiff is also threatened with physical harm as a consequence of the defendant's negligence. While this rubric permits recovery in some instances exclud-

---

**5.** Citing *Buell* and *Netto,* the Sixth Circuit held that the duty to provide an emotionally safe workplace is breached by unconscionable abuse. 899 F.2d at 539–40.

**6.** In reaction to the harsh and seemingly arbitrary exclusion of such genuine claims, some courts have gone to extraordinary lengths to find an "injury" or "impact" to compensate deserving plaintiffs. Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury,* 36 U.Fla.L. Rev. 333, 337 (1984).

ed by the physical injury or impact rule, it nevertheless suffers from the same basic failing: it excludes recovery by persons suffering a genuine emotional injury. The arbitrary nature of this rule is best illustrated by the circumstance that the difference of a handful of inches may determine compensation for emotional distress. *A New Tort, supra.* Further the rule conditions recovery upon a person's fear for one's own safety whereas the true cause for the emotional distress might be seeing another injured or killed.

The bystander proximity rule permits recovery, even if one is not in the zone of danger, provided the complainant: (1) is physically near the scene of the accident; (2) personally observes the accident; and (3) is closely related to the victim. *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968). While this rule provides a broader scope of recovery than the zone of danger test, it employs a set of restrictions that are not directly related to what should be the dispositive issue, *i.e.*, whether the person has in fact suffered an emotional injury caused by the negligence of another. As a consequence, the bystander proximity rule denies recovery to persons sustaining genuine emotional injury. Pearson, *Liability for Negligently Inflicted Psychic Harm: A Response to Professor Bell*, 36 U.Fla.L.Rev. 413 (1984).

The full recovery rule permits a general negligence cause of action for the infliction of serious emotional distress. It requires that the mental injury be evaluated according to an objective standard. The plaintiff's claimed emotional injury must result from a situation in which a reasonable person, normally constituted,[7] would not be able to cope adequately with the mental distress occasioned by the circumstances. *See Prosser and Keeton on Torts* 365 n. 60; *see also Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983).

These four standards reflect competing evaluations of three principal policy considerations limiting recovery for an emotional injury: (1) mental injury is often temporary and relatively trivial; (2) there is a danger that mental claims will be falsified; and (3) there is a perceived unfairness in imposing liability where the injury is a remote consequence of the wrongful act. *Restatement (Second) of Torts* § 436 A comment b; *Prosser and Keeton on Torts* 360-61.

Mindful of the relevance of these considerations, we are not persuaded that they should prevent recovery in all situations in which a person truly has suffered a consequential emotional injury. For as one noted commentary suggests:

It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case. The problem from this perspective is one of adequate proof, and it is not necessary to deny a remedy in all cases because some claims may be false. And where the concern is to avoid imposing excessive punishment upon a negligent defendant, it must be asked whether fairness will permit leaving the burden of loss instead upon the innocent victim.

---

7. "Normally constituted" has been a standard determinant in pure emotional distress cases since *Rodrigues v. State of Hawaii,* 52 Haw. 156, 472 P.2d 509 (1970). We pause to note that the reasonable person by whose constitution recovery will be gauged in maritime cases is a far heartier breed than the flooded-out homeowners in *Rodrigues.* *Cf. Boudoin v. Lykes Bros. Steamship Co.,* 348 U.S. 336, 339, 75 S.Ct. 382, 385, 99 L.Ed. 354, 358 (1955) ("Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the 'disposition' of 'the ordinary men in the calling.'") (citing *Jones v. Lykes Bros. Steamship Co.,* 204 F.2d 815, 817 (2d Cir.), *cert. denied,* 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953)).

Inquiry into the normal constitution of a seaman-plaintiff requires a careful and studied consideration of the nature of the work undertaken, the physical and emotional requisites for the pertinent job, the training and experience of the person involved, and the ordinary characteristics and sensibilities expected of those involved in maritime pursuits. To be excluded are those persons of such fragile or delicate psyche that their resistance to emotional stress falls below that expected of a similarly situated seaman.

*Prosser and Keeton on Torts* 361. *See also The Bell Tolls, supra,* at 351 ("Psychiatric/psychological examining techniques have increased markedly in sophistication since the advent of the physical impact, zone of danger and ensuing physical injury rules. As a result, successfully feigning a psychic injury is not an easy matter."). Consequently one who has suffered a significant emotional injury should not be denied recovery simply because the factual scenario does not satisfy some earlier-selected, fictitious method of authenticating the injury.

There need be little reminder of the mandated liberal interpretation to be ascribed to. the FELA and Jones Act. *Buell,* 480 U.S. at 561–62, 107 S.Ct. at 1413–14; *Gaston,* 866 F.2d at 818. We conclude that a rule which allows recovery for true, significant mental injuries is best attuned to that mandate.[8] Having so stated, we remain vitally aware that seamen and railroaders have chosen callings that "involve braving certain hazards [which] are traditionally not well suited to the squeamish or faint-hearted." *Gaston,* 866 F.2d at 820. In evaluating claims of emotional injury, courts must attribute to those who choose these callings the appropriate daring and strength and quality of character.

Applying the rubric we adopt today to the facts of the case at bar, we find that the district court appropriately dismissed the complaint. The injury complained of is not a reasonably foreseeable consequence of the alleged negligence. One would not reasonably expect a normally constituted seaman, much less a senior, very experienced tugboat captain, to have the emotional reaction alleged by Plaisance who, objectively assessed, was not threatened by the fire. Further, fires in the oilfield and the flaring of gas were not unusual sights and

the other crews were not placed in significant danger. Indeed, the crews of the barge and accompanying tugboat quickly moved to the safety of Plaisance's vessel, which Plaisance placed directly against the barge without being so ordered and without comment. It was a smooth, nigh routine maneuver lasting only a few minutes. It was not until many hours later, and only after he allegedly slipped and fell on spilled fuel on his deck that Plaisance asked to be relieved. Our conclusion is buttressed by the observation of the treating psychiatrist who testified that he was baffled by Plaisance's overall reaction. We share that bafflement.

The judgment of the district court is AFFIRMED.

EDITH H. JONES, Circuit Judge, concurring and dissenting:

With this decision, the majority fashion a general negligence cause of action for infliction of serious emotional distress and have become the first court to accept the Supreme Court's "open invitation to the lower federal courts to explore the possibility of recovery under the FELA for a purely emotional injury."[1] Because this holding is not warranted on the facts before us, imprudently rejects all accepted limitations on emotional injury claims, and conflicts with our precedents, I respectfully dissent from its reasoning, though not from the judgment.

At the outset, it must be noted, the majority have essentially issued an advisory opinion. After finding that there is a cause of action for purely emotional injuries under the FELA and the Jones Act and detailing the analysis for such claims, the majority reject Plaisance's claim because the "injury complained of is not a reasonably fore-

---

8. Today's ruling necessarily belies what we now perceive to be the myopic prognostication of *Gaston,* 866 F.2d at 819.

1. Maj. op. at 1006 (citing *Moody v. Maine C.R. Co.,* 823 F.2d 693 (1st Cir.1987)).

The Ninth Circuit was the first circuit court to recognize a claim under the FELA for purely emotional injuries in *Atchison, T. & S.F.R. Co. v. Buell,* 771 F.2d 1320 (9th Cir.1985), the case

underlying the Supreme Court's "open invitation" to the lower federal courts to explore such claims. Bound by its own precedent, the Ninth Circuit continues to recognize such claims. *See Taylor v. Burlington Northern R. Co.,* 787 F.2d 1309, 1313 (9th Cir.1986). The majority opinion, however, is the first opinion after *Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), to recognize an emotional distress claim under the FELA and the Jones Act.

seeable consequence of the alleged negligence." Because Plaisance failed to establish the *prima facie* elements of any negligence claim, no matter how broadly drawn, it would have been better not to decide whether emotional distress damages are under other circumstances compensable.

The majority have detailed the relevant decisions of this and other circuits, and I will not duplicate their efforts. It suffices to observe that all except the Ninth Circuit have treated emotional injury claims with circumspection. Two of the circuits have rejected claims for emotional injury unaccompanied by physical impact or a threat of impact; one circuit is dubious about it; and only the Ninth stands by a purely emotional injury FELA claim.[2] Our own circuit has cabined this type of claim.[3] *Gaston v. Flowers,* 866 F.2d 816 (5th Cir.1989); *see also Hagerty v. L & L Marine Serv., Inc.,* 788 F.2d 315 (5th Cir.1986).

In *Gaston,* this court refused to construe the FELA to cover bystander injuries. *Id.* at 819. The court explained that because bystander recovery would vastly increase employers' exposure to damages based on random factors that are unrelated to the safe operation of a train or vessel, for example, how many crew members observe an accident, whether their vision is obscured by darkness or weather, or how close they are to the accident scene, such liability would not advance a major purpose of the FELA and the Jones Act—providing employers with incentives to reduce dangers and to operate safely. *Id.* at 820. As *Gaston* observed, allowing bystander recovery could create potentially ruinous liability for employers.

Here, the majority's analysis of emotional distress claims would allow bystanders to recover for emotional injuries if a "reasonable person, normally constituted, would not be able to cope adequately with the mental distress occasioned by the circumstances" that he witnessed. Applying the majority's analysis to the facts of *Gaston* would lead to a different result. Gaston witnessed his half-brother's death. He tried but failed to pull his half-brother to safety as he was crushed between two ships. After this traumatic event, it is quite likely that a reasonable person would not be able to cope adequately with the ensuing mental distress. Yet *Gaston* denied the plaintiff's emotional distress claim.

The majority wave away the inconsistency between today's ruling and *Gaston* by calling the earlier precedent a "myopic prognostication." A more convincing explanation is demanded to escape the force of binding circuit precedent, yet the majority make no attempt to distinguish or limit *Gaston.* By rejecting bystander recovery, *Gaston* implicitly held that this court must analyze emotional distress claims under a standard at least as restrictive as the zone-of-danger test, which requires that the plaintiff be personally endangered.

Finally, even if this issue were properly before us and the majority's holding did not untenably overrule *Gaston,* I would differ with their analysis because it departs from the great weight of authority partly designed to prevent feigned claims of emotional injury. *See Restatement (Second) of Torts* § 436 A (1965) (negligent acts that result in purely emotional injuries are not a

**2.** *Gaston,* 866 F.2d at 818–19 (citing *Adkins v. Seaboard System R.R.,* 821 F.2d 340 (6th Cir. 1987) (rejecting FELA claim for intentional infliction of emotional distress and hinting that it might also reject a claim for negligent infliction of emotional distress); *Hammond v. Terminal R.R. Assoc. of St. Louis,* 848 F.2d 95 (7th Cir. 1988) (rejecting recovery for emotional injury without physical contact); *Moody v. Marine Central R.R. Co.,* 823 F.2d 693 (1st Cir.1987) (observing that its pre-*Buell* holding refusing recovery for purely emotional injury might now be in doubt); *Taylor v. Burlington Northern R.R. Co.,* 787 F.2d 1309 (9th Cir.1986) (holding employer liable for plaintiff's emotional injury).

**3.** Although the *Hagerty* court purported to reject the physical impact/injury requirement for recovery for emotional injuries, that holding was later deemed dicta and the necessity of physical impact or injury for recovery remains an open question. *See Gaston v. Flowers,* 866 F.2d 315 (5th Cir.1989) ("While the *Hagerty* court did observe that a Jones Act recovery was possible without physical impact, that statement was necessarily dictum; for Mr. Hagerty *did* suffer impact, having been drenched with cancer-causing chemicals.").

source of liability); W. Prosser & W. Keeton, *The Law of Torts*, § 54 (5th ed. 1984).

The majority's opinion sets forth the common-law approaches to emotional distress claims—physical impact or injury, zone-of-danger, and bystander recovery—but then rejects these "earlier-selected, fictitious method[s] of authenticating [emotional] injury," as arbitrary tests that prevent recovery in cases of genuine and serious injury. In place of the accepted common-law rules, the majority adopts the "full recovery rule," which allows a "general negligence cause of action for the infliction of serious emotional distress ... evaluated according to an objective standard."[4]

The majority adopted their standard from *Rodrigues v. State*, 52 Haw. 156, 173, 472 P.2d 509, 520 (1970), the first case to allow a general negligence action for emotional distress.[5] Only Hawaii, California, and a minority of other states allow this cause of action. *See* W. Prosser & W. Keeton, *supra*, § 54 at 364–65. The majority of courts compensate emotional distress claims provided the mental distress can be authenticated by some physical injury, illness or other objective physical manifestation. *See id.* at 364 & cases cited in n. 55.[6] "[C]ases will obviously be infrequent in which 'mental disturbance,' not so severe as to cause physical harm, will clearly be a serious wrong worthy of redress and sufficiently attested by the circumstances of the case." *Id.* at 362; *see also Restatement*

*(Second) of Torts* § 436(1) and (2) (1965) (negligent conduct that causes bodily harm solely through emotional disturbances, without physical contact, may be a basis for liability).

One may sympathize with the generous spirit that prompts the majority to recognize the potential genuineness and severity of some emotional injury claims. To acknowledge their existence is not, however, to establish a principled framework for recovery. The majority's "rule" involving the "reasonable able-bodied seaman" is not so much that as an open invitation to creative pleading. Most of the circuits, apparently realizing the slipperiness of such claims, and their proneness to triviality or falsity, have so far wisely declined to bring such claims within the scope of FELA and the Jones Act. *Gaston*, cavalierly treated by the majority, placed limits on such claims. To top it off, Plaisance, having fathered an incredibly broad expansion of liability, will get no benefit from it himself—an ironic twist to a compensation-oriented opinion. This is no way to run a railroad.

---

**4.** The majority holding is not expressly limited to negligent infliction of emotional distress claims, and its definition of the full recovery rule could be construed to encompass claims for the intentional infliction of emotional distress. However, the Plaisances' emotional distress claim is based solely upon a negligence theory and the issue of intentional infliction of emotional distress is not presented in this appeal. If the majority opinion is intended to cover intentional claims, I would have another reason to dissent.

**5.** In *Rodrigues*, the court held that the plaintiffs were entitled to damages for the emotional distress they suffered after the State negligently failed to clear a drainage culvert and their house was flooded. In *Campbell v. Animal Quarantine Station, Etc.*, 63 Haw. 557, 560, 632 P.2d 1066, 1068 (1981), the court applied *Rodri-*

*gues* to the plaintiffs' claim for the emotional distress they suffered when their dog died because of the defendants' negligence. The court held that the plaintiffs could recover for their emotional distress even if they did not witness the tortious event, or introduce medical testimony to substantiate their claims of serious emotional distress. *Id.* at 562, 632 P.2d at 1069.

**6.** A growing number of courts no longer require physical manifestations of emotional distress for recovery. *See Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (Ill.1991); *Folz v. State*, 110 N.M. 457, 797 P.2d 246 (1990); *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987); *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986). *But see Hancock v. Northcutt*, 808 P.2d 251 (Ala.1991); *Reilly v. United States*, 547 A.2d 894 (R.I.1988); *Cunningham v. Lockard*, 48 Wash.App. 38, 736 P.2d 305 (1987).