**Jessy J. WILSON, Sr., Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**No. 91–CV–947.**

United States District Court, N.D. New York.

Jan. 15, 1993.

McClung Peters & Simon, Albany, NY, for plaintiff; Jeremy R. Feedore, of counsel.

McNamee Lochner Titus & Williams, Albany, NY, for defendant; Paul E. Scanlan, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

Plaintiff Jessy J. Wilson, Sr. ("Wilson") commenced this action against his employer, Consolidated Rail Corp. ("Conrail"), pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51–60, to recover damages for injuries he sustained while employed by Conrail. Mr. Wilson alleges that he sustained these injuries "[a]s a result [, wholly or in part,] of the negligent acts and omissions of the defendant, its officers, agents and employees." *See* Plaintiff's Complaint at ¶ 6. Now that discovery has been completed, Conrail moves to have this court grant summary judgment in its favor on the ground that "[t]he Conrail conduct of which Wilson complains is not actionable under the FELA." *See* Defendant's Memorandum of Law at 3. The court heard oral argument on this motion on January 5, 1993. The following constitutes its findings of facts and conclusions of law.

### BACKGROUND

Mr. Wilson has been employed by Conrail in various capacities since 1974. *See* Wilson Deposition ("Tr.") at 9. In 1985, Mr. Wilson was promoted to Supervisor of Materials at Conrail's Dewitt Yard in Syracuse, New York. Subsequently, in 1989, he was transferred to Conrail's Selkirk Yard in Selkirk, New York, as Supervisor of Materials. *See* Tr. at 11–12. In this capacity, his duties included, among other things, the supervision of 12 to 18 employees. *See* Tr. at 15. According to Mr. Wilson, as

> [s]upervisor in charge of the warehouse
> and inventory at defendant's Selkirk

Yard, plaintiff was rendered psychologically unable to work pursuant to a course of harassment on the part of management of the defendant that began in late 1990, culminating in plaintiff twice being hospitalized with suicidal ideations. He has been diagnosed as suffering from an adjustment disorder with depressed mood. The defendant failed to provide plaintiff with proper supervision, and accordingly an unsafe place to work, and failed to take any steps to avoid causing stress and harassment to the plaintiff, despite plaintiff supplications to ease up on him (*Plaintiff's Answers to Defendant's Interrogatories* numbers 27 and 28).

Plaintiff's Memorandum of Law at 1–2 (emphasis in original).

Although not specifically enumerated in his complaint, Mr. Wilson's memorandum of law sets forth the acts of harassment upon which he bases his cause of action:

(1) Plaintiff's immediate supervisor, Larry Feuerstein, subscribed to the philosophy of deliberately antagonizing his employees (*Deposition Transcript of Plaintiff,* taken January 8, 1992, at page 27).

(2) Plaintiff had been told that "Feuerstein was also 'selling me down the tubes. More-or-less blaming me for the problems at Selkirk.... The moral [sic] problems, vandalism problems, they did some—they were putting graffiti on Larry's door; certain things like that. That overall problem at Selkirk was—I was told that from other superiors at Conrail that Larry was saying that I was the cause of the problem.'" (*Plaintiff's Deposition* at p. 39)....

(3) On at least one occasion, plaintiff had to mark off sick as a result of the harassment and pressure being placed upon him by both Larry Feuerstein and his supervisor, Joseph Garczynski; the harsh treatment and harassment continued the day after he returned from being sick and he was criticized for having had to be off sick. (*Plaintiff's Deposition* at pp. 55 and 56).

(4) Plaintiff was made the "company witness" at almost all accident investigations and was directed to testify falsely if it would ensure that the findings would be against the employee. (*Affidavit of Jessy J. Wilson, Sr.,* dated November 24, 1992, para. 14). The course of harassment directed at him intensified as soon as it became apparent that he (plaintiff) would not do so, and culminated in his being targeted for blame following the so-called "fume incident." *Wilson Affidavit,* para. 8.

*See* Plaintiff's Memorandum of Law at 3.

In response to these allegations, Conrail contends that even if these actions can be characterized as "harassment," they do not establish the outrageous or unconscionable employer conduct which is a prerequisite to a cognizable claim under the FELA. *See* Defendant's Memorandum of Law at 40.

## DISCUSSION

### A. Introduction

In this case, Mr. Wilson contends that his cause of action is based upon a claim of negligent infliction of emotional distress. *See* Plaintiff's Memorandum of Law at 12. Conrail, on the other hand, maintains that because plaintiff points to a course of conduct by Conrail as the cause of his injuries, plaintiff's complaint is, in reality, based upon a. claim of intentional infliction of emotional distress. *See* Defendant's Memorandum of Law at 29–30. Having carefully reviewed both plaintiff's complaint and his memorandum of law, the court finds that plaintiff has made it very clear that he is alleging negligent, not intentional, infliction of emotional distress. Accordingly, the court concludes that it has no reason to address the issue of whether a claim of intentional infliction of emotional distress would be cognizable under the FELA.[1]

---

1. The court notes in passing that, faced with a similar dispute, the United States District Court for the Southern District of New York reached the same conclusion. *Masiello v. Metro–North Commuter R.R.,* 748 F.Supp. 199 (S.D.N.Y.1990).

B. Summary Judgment Standard

■ "Summary judgment is appropriate where 'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789, 791 (Fed. Cir.1990) (citing in turn Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986)). The mere existence of some alleged factual dispute, however, will not defeat such a motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 210–211 (1986). Rather, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), there must be no *genuine* issue of *material* fact. *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211 (emphasis in the original). For purposes of this rule, material facts are defined as those which might affect the outcome of the suit under the governing law. *Id.*

■ In deciding whether to grant summary judgment, the court's function is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. Accordingly, the court must leave credibility determinations, weighing of evidence and drawing of legitimate inferences from the facts to the jury. *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2558, 91 L.Ed.2d at 274.

■ Once the moving party has met this burden, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact. Although the court must draw all inferences in favor of the non-movant, the non-movant must do more

"[t]han simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F.Supp. 814, 819–20 (S.D.N.Y.1992) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (interpreting the "genuineness" requirement)); *see also Shamrock Technologies*, 903 F.2d at 792–93. Rather, to meet its burden, the non-movant must present affirmative evidence from which a jury *might* return a verdict in its favor. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added); *see also Greenblatt*, 783 F.Supp. at 819–20. This does not mean, however, that such evidence *must* ensure that the jury will return a verdict in its favor. *See Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217 (emphasis added).

■ Furthermore, as a preliminary matter, the non-movant must "make a showing sufficient to establish the existence of [the] element[s] essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. If the non-movant fails to satisfy this initial burden, there can be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Under these circumstances, the moving party is entitled to a judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

■ For purposes of determining whether or not to grant summary judgment, Rule 56 limits the information which the court may consider to the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file. In this regard, the movant's uncontested assertions in its 10(j) statement are deemed admitted for purposes of deciding whether summary judg-

ment should be granted.[2] *See* Local Rule 10(j); *see also Blackwelder v. Safnauer,* 689 F.Supp. 106, 112–13 n. 2 (N.D.N.Y. 1988), *appeal dismissed,* 866 F.2d 548 (2d Cir.1989). In contrast, as one court in this Circuit has stated

> [i]t is now well-settled that *legal memoranda and oral argument are not evidence* and "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 ([9th Cir.] 1978); *see also Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 46 (1st Cir.1984); *Watts v. United States,* 703 F.2d 346, 353 (9th Cir. 1983).

*United States v. United States Currency in Amount of $23,481.00,* 740 F.Supp. 950, 955 (E.D.N.Y.1990) (emphasis added). It is with these guidelines in mind that the court must determine whether defendant is entitled to the relief it seeks.

## C. Plaintiff's Claim of Negligent Infliction of Emotional Distress

In order to decide whether plaintiff's cause of action can withstand defendant's motion for summary judgment, the court must make two determinations. First, the court must ascertain whether plaintiff has established the existence of the elements essential to his claim of negligent infliction of emotional distress. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at

273. If the answer to this inquiry is "yes," then the court must decide if plaintiff has established that a genuine issue of material fact exists as to whether such a claim is cognizable under the FELA when the injuries complained of are purely emotional. Such a possibility was left open by the Supreme Court's decision in *Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), in which the Court stated, albeit in *dicta,* that

> [t]he question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, ..., that FELA jurisprudence gleans guidance from common-law developments, ..., whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... In addition, although many states have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomatology the victim must demonstrate.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer.

*Id.* at 568–70, 107 S.Ct. at 1417–18, 94 L.Ed.2d at 575–76.[3]

---

**2.** In the present case, plaintiff did not file a 10(j) statement in contradiction to defendant's. Therefore, the court must deem defendant's 10(j) assertions admitted for purposes of this motion.

**3.** As a preliminary matter, the court would like to clear up any confusion which may have been caused by a question it posed to defendant's counsel at oral argument. Such confusion, the court believes, may have resulted from the fact that defense counsel's oral argument focused primarily upon the issue of whether a claim of intentional infliction of emotional distress was cognizable under the FELA. The court asked counsel whether the court should look to New York substantive law to determine whether plaintiff had established a claim for negligent infliction of emotional distress. In response, defendant's counsel answered "no" because under *Urie* where a body of federal common law

exists, as it does in FELA cases, the court should look to that law, rather than state law, for its rules of decision. Although the court agrees with defendant's counsel that " '[w]hat constitutes *negligence* for the [FELA's] purposes is a federal question, ...,' " *Gillman v. Burlington Northern Railroad Co.,* 878 F.2d 1020, 1022 (7th Cir.1989) (emphasis added) (quoting *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949)), this was not the common law issue the court had in mind when it posed its question. Rather, the court sought to elicit from defendant's counsel whether, prior to deciding if such a claim is cognizable under the FELA, the court should look to state law to determine if plaintiff had established a *prima facie* case of negligent infliction of emotional distress. The court posed this question, in part, because its own research had been unable to uncover any substantial body of federal common law pertaining to this issue. *See also Gill-*

### 1. New York Law

■ Although physical injury or impact is no longer required to maintain a cause of action for negligent infliction of emotional distress in New York, the plaintiff must nevertheless demonstrate that he was put in fear for his personal safety as a result of a traumatic event. *Burwell v. Dean Witter Reynolds, Inc.*, No. 23753/88 002, 1990 WL 308123 at *3 (New York Supreme Court, New York County, May 24, 1990) (citing *Battalla v. State of New York*, 10 N.Y.2d 237, 176 N.E.2d 729, 219 N.Y.S.2d 34 (1961); *Impastato v. Hellman Enters., Inc.*, 147 A.D.2d 788, 790, 537 N.Y.S.2d 659, 661 (3d Dep't 1989)). Moreover, such a cause of action requires that the plaintiff show that the defendant engaged in extreme or outrageous conduct recklessly causing severe emotional distress. *Burwell* at *3 (citing *Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992 (1978); *Van Swol v. Delaware Valley Cent. Sch. Dist.*, 117 A.D.2d 962, 499 N.Y.S.2d 274 (3d Dep't 1986)).

In *Green v. Leibowitz*, 118 A.D.2d 756, 500 N.Y.S.2d 146 (2d Dep't 1986), the court rejected the plaintiff's contention that "[r]ecovery may be had for the negligent infliction of emotional distress whenever a direct duty to the plaintiff is owed and a breach of that duty results in emotional injury." *Id.* at 757, 500 N.Y.S.2d at 148. Although the court recognized that physical injury was no longer a necessary element of the plaintiff's cause of action, it held that "[t]he cause of action must, ne-

vertheless, be premised upon a breach of duty which 'unreasonably [endangers] the plaintiff's physical safety.'" *Id.* at 757, 500 N.Y.S.2d at 148 (citing *Bovsun v. Sanperi*, 61 N.Y.2d 219, 229, 461 N.E.2d 843, 847, 473 N.Y.S.2d 357, 361 (1984); *Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504, 448 N.E.2d 1332, 1334, 462 N.Y.S.2d 421, 423 (1983); *Becker v. Schwartz*, 46 N.Y.2d 401, 386 N.E.2d 807, 413 N.Y.S.2d 895 (1978); *Battalla*, 10 N.Y.2d 237, 176 N.E.2d 729, 219 N.Y.S.2d 34). *See also Jensen v. L.C. Whitford Co.*, 167 A.D.2d 826, 562 N.Y.S.2d 317 (4th Dep't 1990).[4]

■ Although plaintiff appears to agree with the court that New York substantive law provides the relevant rules of decision for this issue, he makes no effort to apply the applicable law to the facts of this case. Instead, he rests his case upon the unsubstantiated assertion that the cases cited in footnote 13 of defendant's memorandum of law support his contention that "New York Courts are evolving in the same direction as the Fifth Circuit Court of Appeals in *Plaisance [v. Texaco, Inc.*, 937 F.2d 1004 (5th Cir.1991) ]." *See* Plaintiff's Memorandum of Law at 12–13. Plaintiff's reliance on *Plaisance*, however, is misplaced.

In *Plaisance*, the court was faced with the issue of whether the plaintiff could recover for purely emotional injuries under the Jones Act. After discussing the four paradigms of recovery for a claim of negligent infliction of emotional distress, the court adopted the full recovery rule as best befitting the liberal construction courts normally give to the FELA.[5] According to

---

*man*, 878 F.2d at 1022 (reaching same conclusion).

**4.** In footnote 13 of its memorandum of law, defendant cited several cases in which New York courts allowed recovery for the negligent infliction of emotional distress even though the above-stated requirements had not been met. *See Johnson v. State of New York*, 37 N.Y.2d 378, 334 N.E.2d 590, 372 N.Y.S.2d 638 (1975) (negligent transmission of a message that plaintiff's mother had died); *Lando v. State of New York*, 39 N.Y.2d 803, 351 N.E.2d 426, 385 N.Y.S.2d 759 (1976) (negligent mishandling of plaintiff's daughter's corpse); *Martinez v. Long Island Jewish Hillside Medical Ctr.*, 70 N.Y.2d 697, 512 N.E.2d 538, 518 N.Y.S.2d 955 (1987) (negligent diagnosis that induced plaintiff to

undergo an unnecessary abortion). The court notes that in each of these cases in which the plaintiff's emotional distress was caused by a third-party's injuries, that third-party was related to the plaintiff. For this reason, among others, the court concludes that these cases are inapposite to the present action. *See Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305 (2d Cir.1986) (reaching same result).

**5.** These four paradigms (from the most restrictive to the least restrictive) are as follows: (1) physical injury or impact; (2) zone of danger; (3) bystander; and (4) full recovery. *Plaisance v. Texaco, Inc.*, 937 F.2d at 1009 (citing Comment, *A New Tort in California: Negligent Infliction of Emotional Distress (For Married Couples Only)*, 41 Hastings L.J. 447 (1990)).

the court, this rule would permit a general negligence cause of action for infliction of serious emotional distress. *Id.* at 1010. Moreover, the court held that recovery would be permitted in such an action where "a reasonable person, normally constituted, would not be able to cope adequately with the mental distress occasioned by the circumstances." *Id.* (citing Prosser & Keeton, *Torts* at 365 n. 60). Nevertheless, the court dismissed the plaintiff's claims because his injury was not a reasonably foreseeable consequence of the defendant's alleged negligence. *Plaisance,* 937 F.2d at 1011.

Subsequently, the Fifth Circuit sitting *en banc* reconsidered *Plaisance* to "[c]onsider whether its facts were appropriate ones for us to establish a rule for the recovery for purely emotional injuries under the Jones Act." *Plaisance v. Texaco, Inc.,* 966 F.2d 166, 168 (5th Cir.1992) (en banc). Because it agreed with the panel's conclusion that the plaintiff's injury was not reasonably foreseeable, the *en banc* court concluded that "[t]he facts of this case make it unnecessary for us to decide whether the Jones Act permits recovery for purely emotional injuries." *Id.* at 167. Furthermore, the court stated that "[t]o avoid any possible confusion that our decision to review this case en banc may cause, we emphasize that *Gaston v. Flowers Transp.,* 866 F.2d 816 (5th Cir.1989), continues to represent the law of this circuit.... In rejecting bystander recovery, *Gaston* implicitly foreclosed recovery under any less exacting model, such as a full recovery theory." *Id.* at 169.

Even if the Fifth Circuit had not reconsidered its decision in *Plaisance,* the cases defendant cites in footnote 13 of its memorandum of law and upon which plaintiff relies do not indicate, despite plaintiff's bald assertion to the contrary, that New York courts have adopted, or intend to adopt, the full recovery rule. Thus, the court concludes that in order to establish a *prima facie* case of negligent infliction of emotional distress under New York law, plaintiff must demonstrate that Conrail's actions either endangered his physical safety or put him in fear for such safety.

Nowhere in his complaint, his memorandum of law, or his affidavit has plaintiff alleged any such facts. Absent such evidence, the court must conclude that plaintiff has failed to establish the existence of the essential elements of his *prima facie* case of negligent infliction of emotional distress. Thus, there can be no genuine issue of material fact with respect to this claim.

### 2. The FELA

In light of plaintiff's failure to establish his *prima facie* case, the court finds it unnecessary to decide whether, or under what circumstances, the FELA might permit recovery for purely emotional injuries based upon a claim of negligent infliction of emotional distress. Thus, the court concludes that defendant is entitled to judgment as a matter of law. Accordingly, the court grants Conrail's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

IT IS SO ORDERED.